UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ALYSSA BEISSEL, individually and on behalf of her minor daughter B.B., | Civ. No.: |
| Plaintiff, | **COMPLAINT** |
| v. | Jury Trial Demanded |
| WAWONA PACKING CO., LLC a California limited liability company, | |
| Defendant. | |

COMES NOW the Plaintiff, Alyssa Beissel (hereinafter "Plaintiff"), by and through her attorneys of record OFT Food Safety and Injury Lawyers, to assert claims against Wawona Packing Co., LLC (hereinafter "Wawona" or "Defendant") and alleges as follows:

### NATURE OF THE ACTION

1. This case arises out of a large multistate outbreak of *Salmonella* Enteritidis caused by peaches produced and sold by Defendant Wawona that sickened Plaintiff's 4-year-old daughter, B.B.

2. As a result of consuming the contaminated peaches produced by Defendant Wawona, Plaintiff's minor daughter B.B. contracted a severe *Salmonella* infection, requiring hospitalization and resulting in significant injuries.

## THE PARTIES

3. Plaintiff Alyssa Beissel resides in Hastings, Minnesota with her minor daughter B.B. and husband Blayne Beissel. Plaintiff is therefore a resident of the State of Minnesota.

4. Defendant Wawona Packing Co. LLC is a California limited liability company with its principal place of business and corporate headquarters located in Fresno, California. Defendant is therefore a citizen of the State of California.

5. Defendant Wawona's California Agent for Service is Daniel Gerawan, 7108 N. Fresno Street, Suite 450, Fresno, California 93720.

6. Upon information and belief, Defendant Wawona also does business under the assumed name "Prima Wawona."

7. Defendant Wawona is in the business of producing, processing, packaging and distributing fresh fruit products, including into the State of Minnesota.

## JURISDICTION AND VENUE

8. This court has jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy, exclusive of interest and costs, exceeds Seventy-five Thousand Dollars ($75,000.00) and the parties are citizens of different states.

9. Venue of this matter is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim set forth herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

### *Salmonella* and Food Safety

10. *Salmonella* is a bacterium that occurs in humans and other animals and is shed in their feces.

11. When *Salmonella* is ingested by humans it can cause severe gastroenteritis called salmonellosis. Symptoms of salmonellosis include nausea, vomiting, diarrhea, and abdominal pain. Headache, myalgia, and low-grade fever may also accompany salmonellosis.

12. Symptoms typically develop within 6 to 72 hours after ingesting contaminated food or water. Symptoms usually last for several days but severe cases can last much longer and result in serious medical complications.

13. Long-term health issues in individuals who suffer from salmonellosis are well-documented and include reactive arthritis, inflammatory bowel syndrome, and immunological deficiencies.

14. Children, the elderly, and people with compromised immune systems are particularly susceptible to serious illness and death.

15. In partnership with state health departments, the Centers for Disease Control and Prevention ("CDC") actively monitors *Salmonella* cases throughout the country to identify outbreaks. Using sophisticated genetic typing technology known as Pulse Field Gel Electrophoresis (PFGE) and Whole Genome Sequencing (WGS), the CDC can detect when multiple *Salmonella* infections are caused by a genetically related strain of the

bacteria. Public health investigators then use this data and interviews to pinpoint the source of a particular outbreak.

16. Because of the well-known risks to human health posed by *Salmonella* bacteria, responsible food manufacturers take steps to prevent contamination of their food products and processing environments and to actively monitor the safety of their products.

17. Fresh fruit presents a particular risk of microbial growth when inappropriately processed, packaged, stored or handled because it can support the growth of bacteria and is a ready-to-eat product that does not typically undergo a kill-step like cooking prior to consumption.

18. Responsible fresh fruit producers therefore must address food safety at every step of production, from farm to fork.

19. In fact, as early as 1998, the Food and Drug Administration (FDA) published a guidance document to industry entitled "Draft Guide to Minimize Microbial Food Safety Hazards for Fresh Fruits and Vegetables."

20. More recently, in 2015, FDA published the Produce Safety Rule as part of the implementation of the Food Safety Modernization Act.

21. Following the Produce Safety Rule, FDA published a new guidance document entitled "Draft Guidance for Industry:  Standards for the Growing, Harvesting, Packing, and Holding of produce for Human Consumption."

22. This now two-year-old guidance document spells out the risks posed by fresh fruit and sets minimum sanitation standards:

> Produce is usually grown outdoors in soil, with influences from weather and other environmental factors, and often does not receive treatment after harvesting that adequately removes pathogens that can cause human illness (referred to in this draft guidance as microorganisms of public health significance). Therefore, we place emphasis on preventive measures throughout growing, harvesting, packing, and holding produce to reduce the incidence of contamination of produce that can lead to foodborne illness.

23. In short, the risk of pathogenic contamination of fresh fruit was well known in the industry and responsible producers should implement and verify robust food safety programs.

### *Salmonella* Outbreaks and Investigation

24. In Minnesota, *Salmonella* is classified as a reportable disease under Minn. R. 4605.7040 (B)(43).

25. Because *Salmonella* is a reportable disease, when a person in Minnesota tests positive for the bacteria, the person's health care providers are required to relay that positive test result to the Minnesota Department of Health (MDH) within one working day using the Enteric Disease Reporting Form.

26. MDH is required to investigate cases of reportable diseases, including *Salmonella,* "for the purpose of verification of the existence of disease, ascertaining the source of the disease causing agent, identifying unreported cases… and informing the public if necessary." Minn. R. 4605.7500. Unusual case incidence, including "any pattern of cases" or "increased incidence… which may indicate … an outbreak" calls for increased attention and an immediate telephone report to MDH, and laboratories must submit test

5

results and clinical materials for cases and suspected cases upon request. Minn. R. 4605.7050.

27. According to the MDH, outbreaks can be "detected through routine surveillance activities that include interviewing all persons who are diagnosed with a reportable disease" like *Salmonella*. "[W]hen multiple cases report a common exposure, such as eating a common food item" MDH initiates an investigation.

28. At the national level, the CDC conducts the same type of reportable disease surveillance and outbreak detection and investigation.

29. According to the CDC, "If a larger number of people than expected appear to have the same illness in a given time period and area, it's called a cluster. When an investigation shows that ill people in a cluster have something in common to explain why they all got the same illness, the group of illnesses is called an outbreak."

30. When the CDC detects a foodborne disease outbreak, investigators work to collect three types of data: epidemiologic data, traceback data, and food and environmental testing data. This information helps health officials pinpoint the source of the outbreak.

31. Epidemiologic data includes "[p]atterns in the geographic distribution of illnesses, the time periods when people got sick, and past outbreaks involving the same germ," "[f]oods or other exposures occurring more often in sick people than expected," and "clusters of unrelated sick people who ate at the same restaurant, shopped at the same grocery store, or attended the same event," according to the CDC.

32. Traceback data includes a "common point of contamination in the distribution chain, identified by reviewing records collected from … stores where sick

6

people ate or shopped," and "[f]indings of environmental assessments in food production facilities, farms, and restaurants identifying food safety risks."

33. Food and environmental testing data includes: "The germ that caused illness found in a food item collected from a sick person's home, a retail location, or in the food production environment" and "[t]he same DNA fingerprint linking germs found in foods or production environments to germs found in sick people."

34. "When investigating outbreaks of infectious disease, public health investigators sometimes find that the way people get sick involves a commercial entity (e.g., a store or restaurant they patronized), an institution or company (e.g., a hotel or hospital they stayed at), or a particular product they bought. CDC has a long-standing practice of regularly disclosing names of commercial entities implicated in infectious disease outbreaks in order to protect public health. … Once a specific source is implicated in an infectious disease outbreak, CDC routinely provides information during an ongoing investigation if there are actions that individuals can take to protect their health. When an outbreak is over and the investigation has been completed, CDC usually provides specific information when there is conclusive evidence regarding the root cause of contamination."

## Outbreak of *Salmonella* Enteritidis

35. In early July of 2020, the CDC detected clusters of illnesses all caused by *Salmonella* Enteritidis.

36. Soon, WGS analysis of samples obtained from sick individuals from these clusters confirmed that they were all sickened by a genetically distinct strain of *Salmonella* Enteritidis, indicating a common food source for the illnesses.

37. Initial epidemiologic and traceback evidence collected by public health investigators, including those at the Minnesota Department of Health (MDH), indicated that bagged peaches supplied by Defendant Wawona and sold mainly at Aldi grocery stores were the source of the illnesses.

38. The implicated product is depicted below:



39. As of September 2, 2020, the CDC reported that a total of 78 people across 12 states were infected with the outbreak strain of *Salmonella* Enteritidis linked to Defendant's peaches.

40. The illnesses identified so far occurred within the period from June 29, 2020, to August 3, 2020, and include 23 hospitalizations.

41. Recognizing that Defendant's peaches caused human illnesses and in an effort to protect its customers, Aldi initiated a recall on August 19, 2020, of all peaches received from Defendant Wawona.

42. Aldi's recall included the following products:

| Product | Packaging | UPC Code | Select Stores in These Affected States |
|---|---|---|---|
| Wawona Peaches 2 lb. | 2 lb. bag | 033383322001 | Connecticut, Florida, Illinois, Iowa, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, North Dakota, New Hampshire, New York, Ohio, Pennsylvania, Rhode Island, South Dakota, Vermont, Virginia, Wisconsin and West Virginia |
| Peaches Organic 2 lb. | 2 lb. bag | 849315000400 | Connecticut, Illinois, Iowa, Massachusetts, Michigan, Minnesota, North Dakota, New Hampshire, New York, Ohio, Pennsylvania, Rhode Island, South Dakota, Vermont, Wisconsin and West Virginia |


Pictured: Peaches Organic 2 lb.


Pictured: Wawona Peaches 2 lb.

43. On August 21, 2020, Defendant Wawona, acting under the Prima Wawona name, recalled a variety of bagged peaches for potential *Salmonella* contamination.

Peaches associated with the August 21, 2020, recall were sold under the Wawona, Prima, Marketside, Kroger, and Wegmans brand names throughout 34 states.

44. The next day, Prima Wawona expanded the recall to include bulk/loose peaches.

### B.B.'s *Salmonella* Infection

45. On or about July 17, 2020, Plaintiff purchased a two-pound bag of peaches produced and sold by Defendant Wawona from an Aldi grocery store in Cottage Grove, Minnesota.

46. The Wawona peaches were consumed by Plaintiff's four-year-old daughter B.B. over the course of the following week.

47. On or about July 25, 2020, B.B. began suffering diarrhea, nausea and vomiting. B.B.'s condition continued to deteriorate over the next several days.

48. On or about July 30, 2020 B.B. was taken to St. Paul Children's Hospital. Several diagnostic tests were performed including blood and stool pathogen screens.

49. The next day, the blood culture tested positive for *Salmonella* Enteritidis – a medical emergency.

50. A stool culture from B.B. also tested positive for *Salmonella* Enteritidis.

51. B.B. remained hospitalized for several days and has not yet fully recovered.

52. B.B.'s sample was forwarded to MDH, where investigators performed WGS analysis and uploaded the results to CDC's database.

53. The WGS analysis confirmed that B.B. was sickened by the outbreak strain of *Salmonella* Enteriditis linked to Defendant Wawona's peaches.

54. As a result of B.B.'s *Salmonella* infection caused by Defendant's contaminated peaches, she suffered severe symptoms including severe abdominal pain; diarrhea, dehydration, fear, pain and suffering.

55. As a result of B.B.'s *Salmonella* infection caused by Defendant's contaminated peaches, Plaintiff's incurred and will incur medical and hospital expenses for the treatment of B.B.'s injuries.

## COUNT I
## Strict Product Liability

56. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here.

57. Defendant Wawona produced, processed, packaged, manufactured, marketed, and sold the contaminated peaches that caused B.B.'s *Salmonella* infection.

58. The peaches produced by Defendant and consumed by B.B. were contaminated with *Salmonella* and therefore defective when it left the control of Defendant Wawona.

59. Plaintiff served and B.B. consumed the contaminated peaches as intended by Defendant Wawona.

60. B.B.'s consumption of the contaminated peaches caused her to become infected with the *Salmonella* bacteria and to become very ill.

61. *Salmonella* is particularly dangerous when consumed by children like B.B.

62. Because *Salmonella* is colorless and odorless, consumers like Plaintiff and B.B. have no way of detecting the contamination before consumption.

63. The peaches produced by Defendant and subsequently purchased by Plaintiff and consumed by B.B. were contaminated with *Salmonella* and therefore unreasonably dangerous to ordinary consumers for the intended use of the product.

64. Defendant is therefore strictly liable to Plaintiff and B.B. for the harm proximately caused by its production and sale of contaminated peaches.

65. As a direct and proximate result of Defendant's production and sale of defectively manufactured peaches, Plaintiff and her minor daughter B.B. suffered the damages and losses as set forth in this Complaint.

## COUNT II
### Negligence

66. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth here.

67. Defendant Wawona manufactured, supplied, marketed, and sold the peaches purchased by Plaintiff and consumed by B.B.

68. Defendant Wawona was negligent in and about its manufacturing, supplying, marketing, and sale of the adulterated peaches that caused the *Salmonella* outbreak.

69. Defendant Wawona owed a duty to the intended customers of its peach products, including Plaintiff and B.B., to ensure that its products were free of dangerous pathogens, including *Salmonella*.

70. Defendant Wawona breached this duty by the following acts and omission, among others:

   a. Failing to implement and follow Good Agricultural Practices (GAPs);

    b. Inadequately selecting screening, and monitoring the suppliers of peaches used in its products;

    c. Inadequately maintaining and monitoring the safety of its products, premises, equipment and employees;

    d. Failing to properly operate its growing; production, and distribution facilities in a safe, clean and sanitary manner;

    e. Failing to adopt, implement, follow and verify adequate food safety policies and procedures that met industry standards for the safe and sanitary production of fresh peaches;

    f. Failing to properly train its employees and agents to: prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance;

    g. Failing to adequately supervise its employees and agents, including growers, to: prevent the transmission of *Salmonella*; follow its own food safety program; and operate in compliance with FDA guidance; and

    h. Other acts and omissions as revealed through investigation and discovery.

71. As a direct and proximate result of Defendant Wawona's negligence, Plaintiff and her minor daughter B.B. suffered the damages and losses as set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendant as follows;

1. For an award of compensatory damages, including damages against Defendant for medical and hospital expenses; physical and mental pain and suffering; disability; and other damages according to proof at trial in excess of Seventy-Five Thousand Dollars ($75,000.00);

2. For reasonable attorney fees and costs as permitted by law;

3. For pre- and post-judgment interest; and

4. For such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

Dated: September 3, 2020

_____
Ryan M. Osterholm (#0390152)
Brendan Flaherty (#0327657)
Lindsay Lien Rinholen  (#0397560)
Counsel for Plaintiff
OFT Law PLLC
730 2nd Ave S. Suite 810
Minneapolis, MN 55402
Phone: (888) 828-7087
Fax: 888-239-0559
ryan@oftlaw.com
brendan@oftlaw.com
lindsay@oftlaw.com


*ATTORNEYS FOR PLAINTIFF*